UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 JUL 16 AM 10: 43

CLERK

BY PC
DEPUTY CLERK

PENNY WITHERBEE,

    Plaintiff,

v.

TOWN OF BRATTLEBORO,
BRATTLEBORO POLICE DEPARTMENT,
PATRICK M. MORELAND,
MARK E. CARIGNAN,
MICHAEL R. FITZGERALD,
and PETER ELWELL,

    Defendants.

Civil Action No. 2:18-cv-113

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff, Penny Witherbee, hereby complains against the above-named Defendants as follows:

## PARTIES

1. Plaintiff, Sergeant Penny Witherbee, is a resident of the Town of Brattleboro, Vermont.

2. Defendant, Brattleboro Police Department is a department of the Town of Brattleboro, a Vermont municipality as established by municipal ordinance, Article VI, Division 4, Sec 2-82, *et seq.*

3. Defendant Peter Elwell is the Town Manager of the Town of Brattleboro, Vermont and upon information, knowledge and belief, a resident of Brattleboro, Vermont.

4. Defendant Patrick M. Moreland is the Assistant Town Manager of the Town of Brattleboro, Vermont and upon information, knowledge and belief, a resident of Brattleboro, Vermont.

1

5. Defendant Michael R. Fitzgerald is the Chief of Police of the Brattleboro Police Department and upon information, knowledge and belief, a resident of Brattleboro, Vermont.

6. Defendant Mark R. Carignan is the Captain of the Brattleboro Police Department and upon information, knowledge and belief, a resident of Chesterfield, New Hampshire.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, namely, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.*

8. Claims are also stated under the laws of the State of Vermont, and this Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because all but one of the Defendants reside in this District, and because a substantial part of the events or omissions giving rise to the claims occurred within this District.

## Nature of the Action and Relief Sought

10. Plaintiff is a female sergeant with the Brattleboro Police Department ("BPD"). She was hired in 2002 and throughout her time with the BPD Defendants have subjected her to unlawful workplace discrimination on the basis of her gender.

11. Plaintiff has been subjected to unwanted sexual advances by Deputy Town Manager Patrick Moreland and by Captain Carignan.

12. Plaintiff has been denied promotions because of her gender.

13. Plaintiff has been subjected to disparate treatment in that she has been denied bonus payments received by similarly situated male colleagues.

14. Plaintiff has been subjected to disparate treatment in that she has been subjected to discipline for conduct that similarly situated male colleagues regularly engaged in without incurring discipline.

15. Plaintiff has been demoted for conduct which was also performed by similarly situated male colleagues without disciplinary consequences.

16. Plaintiff has been subjected to continual and frequent pejorative insults on the basis of her gender.

17. Plaintiff seeks appropriate injunctive relief, compensatory and punitive damages, costs and attorney fees and any other relief that the Court may find appropriate.

## Facts

18. Plaintiff was hired by Brattleboro Police Department in 2002.

19. Plaintiff was initially hired as a patrol officer.

20. Plaintiff immediately observed that the type of calls she was assigned were influenced by her gender in that she would be denied allocation of violent calls in favor of domestic calls.

21. Plaintiff was instructed by the Chief, as her training officer, that "if a male you are arresting does not want a female to handcuff him, have a male officer do it".

22. Plaintiff was informed by Chief Fitzgerald (who held the rank of officer at that time) that although he would consent to share a desk with her he did not want to be exposed to any "girly stuff" on his desk.

23. Plaintiff was assigned a dressing area in the locker room next to another female officer and the area the female officers used was regularly and openly referred to as "the twat cave" by both colleagues and supervisors.

24. On or about July, 2003, during a social event, Captain Carignan (who held the rank of officer at that time) pushed Plaintiff against a wall and attempted to touch and kiss her against her will.

25. On or about December 6, 2013, Plaintiff attended the scene of a hit and run motor vehicle accident.

26. On or about December 7, 2013, Assistant Town Manager Patrick Moreland approached Plaintiff purportedly to ask her how she was coping after attending the accident scene. During the conversation Mr. Moreland pulled Plaintiff towards him and hugged and kissed her against her will. The incident was witnessed by Officer David Ceretto.

27. Plaintiff immediately notified Lieutenant Carrier of what had just occurred.

28. Plaintiff immediately notified Dispatcher Stires and Dispatcher Marrero of Mr. Moreland's inappropriate behavior.

29. On or about 14:26 hours on December 7, 2013, Plaintiff exited the police building to respond to a call. On entering the parking lot she observed Mr. Moreland standing by his vehicle in the parking lot.

30. Approximately thirty minutes later when Plaintiff again passed through the parking lot she saw that Mr. Moreland was still present and he kissed his hand and twice made an action to symbolize blowing her a kiss. This was witnessed by Dispatcher Stires.

31. Plaintiff complained to Lieutenant Kirkpatrick about Mr. Moreland's behavior.

32. Plaintiff complained to Lieutenant Evans about Mr. Moreland's behavior.

33. Plaintiff complained to Lieutenant Perkins about Mr. Moreland's behavior.

34. On or about January 2, 2014, Plaintiff was engaged in conversation with Captain Carignan (who held the rank of sergeant at that time) when Mr. Moreland approached them and greeted Plaintiff with the words "hello sweetheart."

35. Plaintiff informed Captain Carignan that Mr. Moreland's words made her uncomfortable.

36. Plaintiff attended a training event at Brattleboro Union High School on or about January 29, 2014 and during the course of the lunch break Mr. Moreland approached her from behind and stroked his hand up and down her back multiple times.

37. Plaintiff complained to Captain Carignan about Mr. Moreland's behavior on this occasion.

38. Plaintiff complained to Lieutenant Evans about Mr. Moreland's behavior on this occasion.

39. Plaintiff complained to Lieutenant Kirkpatrick about Mr. Moreland's behavior on this occasion.

40. Plaintiff complained to Lieutenant Perkins about Mr. Moreland's behavior on this occasion.

41. Plaintiff's complaints to her supervisors were not acted on and she became the butt of their jokes as to Mr. Moreland being "her boyfriend."

42. Plaintiff feared that she would suffer repercussions if she attempted to further pursue her concerns.

43. On or about February 6, 2014, Plaintiff shared her concerns with the Chief of Police at that time, Chief Eugene M. Wrinn.

44. Chief Wrinn instructed Plaintiff to commit her concerns to writing which she did.

45. On or about March, 2014, Plaintiff attended a mediation session with Mr. Moreland wherein he apologized to Plaintiff and Mr. Moreland ceased sexually harassing Plaintiff after the mediation session.

46. Upon information and belief Mr. Moreland did not suffer any disciplinary consequence for his behavior.

47. Mr. Moreland still holds the position of Assistant Town Manager with the Town of Brattleboro.

48. Upon information and belief, the Supervisors to whom Plaintiff complained regarding Mr. Moreland's behavior did not receive any disciplinary consequence for failing to take any action to protect Plaintiff.

49. In 2008 Plaintiff successfully applied for promotion to sergeant.

50. Other members of the BPD alleged that Plaintiff was only promoted because she was female.

51. Plaintiff found it difficult to assert supervisory authority in her new position because of the misogynistic attitudes of her supervisors and colleagues.

52. Plaintiff complained to Lieutenant Evans regarding the openly misogynistic and insubordinate attitudes of her inferior officers but he did not take any action.

53. In 2010 Lieutenant Evans instructed Plaintiff to truthfully inform a judge that a delay in applying for a search warrant had been caused by delays in the State's Attorney's Office.

54. Chief Fitzgerald refused to believe that Plaintiff had been following the order of Lieutenant Evans even when the latter confirmed it.

55. Chief Fitzgerald then demoted Plaintiff from her position as detective sergeant but did not impose any discipline on the male supervisor, Lieutenant Evans, who had ordered her to disclose the reason for the delay to the court.

56. Plaintiff later discovered that Chief Fitzgerald had agreed to replace her with a male colleague prior to the incident in question.

57. Plaintiff successfully grieved the demotion and was returned to the rank of sergeant.

58. Plaintiff was not restored to the detective position which was retained by the male Officer who had replaced her.

59. On or about April 5, 2015, Plaintiff was promoted to the rank of lieutenant on a probationary basis.

60. On or about May 5, 2016, Plaintiff's probationary period as a lieutenant was cancelled and she was demoted back to sergeant.

61. Plaintiff was given a number of reasons for her demotion, which included, *inter alia*, failing to ensure that subordinate officers completed their daily case descriptions before finishing their shifts.

62. Plaintiff has documentary evidence that this "failure" is commonplace and that none of the male supervisors have incurred a disciplinary consequence for failing to correct this behavior.

63. On or about July 14, 2016, Captain Carignan placed an open-ended five day notification restriction on Plaintiff's eligibility to adjust her work schedule because

two of her subordinate officers had finished their shifts without completing a daily report.

64. Upon information and belief similarly situated male supervisors have not been subjected to discipline for the same conduct.

65. Plaintiff frequently asked Captain Carignan to rescind the restriction but she did not receive a meaningful answer for the next eleven months.

66. On June 6, 2017, Plaintiff informed Chief Fitzgerald that she was in the process of complaining to the EEOC regarding the unlawful discrimination to which she had been subjected for many years.

67. The notification restriction was immediately rescinded without adequate explanation.

68. On March 20, 2017, Plaintiff was subjected to a full internal affairs investigation regarding the shooting of a cat which she suspected was rabid.

69. Upon information and belief male officers have shot suspected rabid animals without being subjected to investigation.

70. On or about November 9, 2016, Captain Carignan mistakenly formed the belief that Plaintiff had made a number of mistakes and he instructed her supervising Lieutenant to "counsel" her regarding the same.

71. Plaintiff met with the Lieutenant and they agreed that she was not the sergeant involved in the issues of concern.

72. Upon information, and belief the male officers involved in the specified issues have not been investigated.

73. Captain Carignan continues to refer to these issues as examples of Plaintiff's poor performance despite it being established that she was not involved in the matters he is

referencing.

74. On or about May 1, 2017, Chief Fitzgerald ordered Plaintiff to meet with him and Captain Carignan to discuss her use of sick leave.

75. Plaintiff attempted to respond to Captain Carignan's questions but he became enraged and abusive and accused Plaintiff of being "a liar" adding that "even though I have no way of proving it, I'm going to call it what it is, it's bullshit."

76. Chief Fitzgerald and Captain Carignan subjected Plaintiff to verbal abuse which culminated in Chief Fitzgerald shouting at Plaintiff to "get the fuck out of my office."

77. Plaintiff was visibly distressed and crying as she left the meeting and this was seen by her colleagues and subordinate officers.

78. Lieutenant Perkins recently completed a positive annual review of Plaintiff's work performance.

79. Captain Carignan instructed Lieutenant Perkins to alter his review negatively and when he refused Captain Carignan added a negative supplement to the review.

80. Plaintiff has been a member of the Bicycle Special Team for many years.

81. Plaintiff has one colleague on the Bicycle Special Team who is female.

82. There are no male officers on the Bicycle Special Team.

83. There are six other special teams deployed by BPD.

84. The male officers on the six other special teams receive a $500.00 (five hundred dollar) annual stipend for their work on the special team.

85. Plaintiff and her female colleague have requested the same stipend for their contribution to the Bicycle Special Team but it has been denied.

86. Plaintiff was certified as a Field Training Officer (FTO) in 2004, a position which

also attracts an annual bonus of $500.00.

87. However, despite Plaintiff's certification the BPD has refused to utilize her as a FTO and BPD has therefore denied her the FTO bonus which is currently received by similarly situated male colleagues.

88. Plaintiff has tried many strategies to attempt to prevent the continual unlawful harassment that she suffered, including making complaints to supervisors and filing grievances.

89. On or about June 7, 2017, the Town of Brattleboro retained Mr. Stephen Ellis, Esq. to undertake an investigation of Plaintiff's complaints.

90. Plaintiff met with Mr. Ellis on two occasions and fully co-operated with his investigation.

91. The Town of Brattleboro has refused to provide a copy of Mr. Ellis' report to Plaintiff despite several requests for the report via Plaintiff's Counsel.

92. Plaintiff's health has been severely damaged by this ongoing unlawful harassment and she has sought the help of a therapist for depression as a direct result of Defendants' actions.

93. Plaintiff has also received in-patient treatment for depression triggered and exacerbated by the behavior of Defendants.

94. Plaintiff is actively seeking alternative employment which will almost certainly require her to accept a decrease in compensation and benefits.

95. On April 19, 2018, following an investigation, the US Department of Justice, Civil Rights Division granted Plaintiff a Notice of Right to Sue.

## COUNT ONE

### UNLAWFUL SEX DISCRIMINATION
### IN VIOLATION OF TITLE VII, 42 U.S.C. §2000e *et seq.*

96. The foregoing paragraphs are hereby incorporated by reference.

97. Plaintiff was discriminated against in the workplace because of her gender.

98. Defendants' unlawful conduct, individually and combined, was severe and pervasive and had the intent and effect of creating a hostile work environment.

99. Plaintiff was, and continues to be, denied economic benefit because of her gender.

100. Plaintiff was subjected to adverse employment action because she complained of sexual harassment in the workplace.

101. Plaintiff has been forced to seek alternative less well compensated employment because of the ongoing unlawful discrimination and harassment.

102. Plaintiff was arbitrarily and unreasonably held to higher standards than her similarly situated male co-workers.

103. As a result of Defendants' unlawful discrimination, Plaintiff has suffered and continues to suffer severe and lasting losses for which she is entitled to recover damages.

104. Defendants' conduct was wanton, willful and outrageous, and was undertaken with actual malice and/or a reckless disregard for Plaintiff's' rights, such that an award of punitive damages is warranted.

11

## COUNT TWO

### VIOLATION OF VERMONT FAIR EMPLOYMENT PRACTICES ACT, 21 V.S.A. § 495

105. The foregoing paragraphs are incorporated by reference.

106. Defendants discriminated against Plaintiff because of her gender, in violation of Vermont's Fair Employment Practices Act, 21 VSA § 495.

107. Defendants failed to ensure a workplace free of sexual harassment, in violation of Vermont's Fair Employment Practices Act, 21 VSA § 4951.1.

108. As a direct result of Defendants' violations of Vermont's Fair Employment Practices Act, Plaintiff has sustained severe and permanent injuries and losses for which she is entitled to recover compensatory and punitive damages or equitable relief, including restraint of prohibited acts, restitution of wages and other benefits, costs, reasonable attorney's fees and other appropriate relief.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment in her favor, and seeks:

a. payment of back pay, lost wages, benefits, and other remuneration;

b. any appropriate preliminary, temporary and/or permanent injunctive relief, including without limitation an order that Defendants cease and desist from any further acts of retaliation; and

c. compensatory damages;

d. punitive damages;

e. costs of suit and attorney fees;

f. interest; and

g. any and all other appropriate relief.

DATED at West Pawlet, Vermont this 16th day of July, 2018.

LAW OFFICES OF SUSAN EDWARDS, ESQ.

By: /s/ Susan Edwards
Law Offices of Susan Edwards, Esq.
PO Box 134 Wells Post Office
Wells, VT 05774
(914) 715 3632
sueedwardsesq@yahoo.com